## Lehman et al. v. Pennsylvania Game Comm. et al.

*McNees, Hollinger & Nurick,* for plaintiffs.
tiffs.

*Guy K. Bard,* Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *John H. Fertig,* for defendants.

NILES, P. J., nineteenth judicial district, specially presiding, November 19, 1938.—The original plaintiffs, as well as those intervening, are citizens of Pennsylvania, taxpayers, and holders of hunting licenses for the year 1938. Defendants are members of the Pennsylvania Game Commission and the Attorney General. The original bill was filed October 24, 1938, with an amendment filed November 9, 1938. Answer to the bill was filed November 1, 1938, and supplemental answer to plaintiffs' amendment filed November 10, 1938. The issues raised by the pleadings are primarily questions of law. Hearing was had before the court in banc, testimony taken, with argument November 10 and 11, 1938. Learned and complete briefs were filed by counsel for the parties, and also on behalf of the Pennsylvania Federation of Sportsmen's Clubs as amicus curiæ, together with illuminating oral arguments. It was the understanding that the hearing before the court should be a final hearing. The controversy submitted is as to the validity of the resolution of the Pennsylvania Game Commission of July 13, 1938, establishing an open season for the hunting and killing of antlerless deer for the period of six days from November 28 to December 3, 1938; particularly as applied to the Counties of York, Adams, Cumberland, and Franklin, comprising what is called the South Mountain Area. It is further alleged by plaintiffs that

the resolution of the commission and its actions in accordance therewith are unreasonable, arbitrary, and an abuse of its discretion; and that the provisions of section 501 of The Game Law of June 3, 1937, P. L. 1225, under which the commission purports to act, are an unlawful delegation of legislative power in contravention of article II, sec. 1, of the Constitution of Pennsylvania. Plaintiffs further assert that the fixing of an open season for all antlerless deer without minimum age or weight, open to all licensed hunters and covering all the counties and areas without regard to the number of deer in each, violates the express requirements of the game laws and extends the powers over and upon the Game Commission. The answer traverses the material allegations of fact and denies the legal assertions of the bill.

## Findings of fact

1. Prior to adopting the commission's rules and regulations of July 13, 1938, which include provisions regarding deer and other game, a careful State-wide study was made by the Game Commission and its officers, agents, and representatives, with special reference to the deer herd; the result of which was laid before the commission and a joint meeting of the directors of the organized sportsmen of Pennsylvania in May 1938, all of which was given study by the commission, resulting in the resolution of July 13th, when it adopted findings of fact and resolutions fixing the season's bag limits, etc. As the result of the investigation and study the commission among its findings of fact found that the deer herd has become entirely too large for the available forage supplies to sustain it in such condition that it may normally be expected to propagate its own kind in a biologically sound manner; also that the sex ratio is badly unbalanced and should be corrected, necessitating a reduction in the size of the herd through the declaration of an open season of six days on antlerless deer this year, with no open season for antlered male deer; and to accomplish these objectives hunters

should be allowed to take antlerless deer with the regular hunting license wherever such license is required without the issuance of special control permits as authorized by section 501 of the Game Law.

2. The commission did not separate the particular Counties of Adams, York, Franklin, and Cumberland from the others, but took them into consideration along with the counties through the State generally.

3. There is a shortage of food except in a few limited spots in the true deer range in the four counties in question, as well as in the rest of the Commonwealth.

4. The nature of deer and their natural food supply at this time requires the action of the commission complained of in order to carry out the declared purposes of the Commonwealth to protect, propagate, manage, and preserve the game.

5. In the four counties of the South Mountain Belt there is too little food supply for the deer roaming from time to time in that region. The conditions are not as bad in that section as in some other areas; and there are counties where the deer population per square mile of deer territory is more dense.

6. The purpose of the commission in the action complained of is to so regulate the deer herd that it will be maintained in its best condition, and at the same time so that the deer will not materially destroy and affect the food supply of other kinds of game.

7. In the action of the commission, no age or weight limit was fixed regarding antlerless deer. The subject was considered in the light of experience, and it was concluded that the attempt to do this so as to avoid the killing of young deer was almost physically impossible and very impracticable.

8. The commission had the advice and assistance of the Federation of Sportsmen's Clubs. Local sportsmen's clubs in various counties belong to a kind of federation, and they together are organized into a division federation, and all of them in turn attached to a part of a State-

wide federation covering about 60 of the 67 counties of the Commonwealth. After hearing the evidence presented and seeing the result of the research study, the officers and directors of the Federation of Sportsmen's Clubs adopted a resolution recommending to the Pennsylvania Game Commission a State-wide open season for antlerless deer this year, and no open season for male deer.

9. Deer conservation work is a science taught in the colleges of the Commonwealth and elsewhere.

10. In the South Mountain Range there is not sufficient food for the present deer herd. The result is a deterioration in the size of the animals, their general health and physical condition. It also has the effect of crowding them on neighboring farms to forage. Also the food and cover on the forest floor is denuded to the detriment of other game, such as grouse, rabbits, and quail.

11. In 1931, there was an open season in the South Mountain Range which resulted in the material reduction in the number of animals using it. There are now a great many more than there were immediately following the 1931 season.

12. To allow a further increase of deer in the South Mountain Range will be a constant source of annoyance to land owners, and will seriously affect the small game cover and food in the various areas. It will also be a menace on the highway.

13. The true deer range consisting of territory adapted to the normal, natural life of deer in Pennsylvania is approximately 8,000,000 acres. In the last 20 years no deer have been planted in counties other than those which lie in the true deer range. The deer found in the South Mountain Range drifted there because of food conditions, or being frightened by the large number of hunters. This is the process by which parts of the deer herd have drifted until some are found in every county of the State, in many of which the conditions are unnatural and undesirable. Of the 1,579 townships in the State deer may be found in all except 75. Numerous complaints of damage to

farmers and orchard growers have induced the legislation authorizing the commission to furnish deer-proof fencing to the large extent of $10,000 per year. Farmers have also been permitted to kill deer committing depredations on their crops, gardens, and orchards. Complaints have been made by the Department of Forests and Waters about the deer herd. The deer eat the seedlings set out in the attempt to conserve and increase the forests. All of these things were taken into consideration by the Game Commission before its action of July 13th.

14. General resident hunters licenses for 1938 approximate 600,000. Not more than one third of them hunt deer.

15. Publication of the resolution of July 13th was made twice in each of two papers in the various counties. The final notice was August 27th, the first being August 10th.

16. In 1925, there was an open season for antlerless deer when no permits were required. In 1931, there was an open season for the entire State, with no permits required, and in 1928 the entire State was open for antlerless deer without permits, and no bucks were allowed to be killed.

17. In order that there might be ample time for deliberation, advice, and objection, the commission this year sent out its notices at least two months ahead of the time which had been practiced in former years; and the notices to the newspapers were mailed out on August 9th instead of waiting until October.

18. It is probable that there are considerably more than 1,000,000 deer in this Commonwealth.

19. In the South Mountains, for every buck of breeding age there are at least 15 other deer, principally females. This is a bad condition from a biological and conservation point of view. The more correct biological ratio for deer in the wild state would be one buck to one doe. This conclusion is arrived at by biologists from accurate reports in the forests of Germany for a period of upwards of 900 years.

20. It would be inexpedient and impractical to regulate the deer problem in the South Mountain Area by itself because of the management of kills in the attempt to regulate hunters in one particular area. It was tried in 1936 with great disadvantage.

21. The deer herd is too large, and the ratio of the sexes is unbalanced throughout the Commonwealth. The action of the commission complained of was not unreasonable, arbitrary, or oppressive, nor an abuse of its discretion.

22. The action of the Pennsylvania Game Commission in declaring the open season was supported by facts sufficient to justify such action, and the commission made the necessary findings to support its action within the powers delegated to it.

### Discussion

The ownership, jurisdiction, and control of the herd of deer in Pennsylvania are in the Commonwealth, in its sovereign capacity, as provided by The Game Law, supra. The management of this public property is a police regulation vested in the Game Commission which, as an administrative agency, is subject only to the limitations fixed by the legislature. On this commission devolves the duty to protect, manage, and preserve the game. It must do so within the limitations of the authorizing acts. Plaintiffs assert that the fixing of an open season for antlerless deer, as attempted by the resolution of the commission of July 13, 1938, violates the express requirements of the act and exceeds the powers conferred. The act referred to is The Game Law of 1937, and what is said to be the express requirement violated is that section 501 of the act provides that the commission may remove protection and declare an open season, through the Commonwealth or any part thereof, for any game, for certain reasons. The open seasons are according to the table fixed by the legislature, if in any year the commission fails to

establish some other season. Then follows the provision stressed by plaintiffs:

"Deer without visible antlers or horns, of such minimum weight or age as shall be fixed by resolution of the commission", and "No open season except as fixed by resolution of the commission." Plaintiffs contend that this means that the commission may not declare an open season for antlerless deer unless, in the resolution, it fixes the minimum weight or age of such as may be killed; that the law is mandatory and is not complied with unless some minimum weight or age is fixed, even though the question has been considered and no minimum fixed; with the effect that any antlerless deer, no matter how small or young, may be shot in the open season. Considering the whole act and its expressed policy and reasonable implications, we are not convinced that plaintiffs' position on this point is correct. The reasonable construction is that the commission may fix an open season in which deer without visible antlers or horns may be killed, with the exception of such deer as may be below the minimum weight or age, if such minimum weight or age shall be fixed by the commission. The position of plaintiffs that the commission may not fix an open season for antlerless deer, unless it shall fix such minimum weight or age, does not seem reasonable and is rejected. Plaintiffs further insist that, even if the action of the commission, in fixing no minimum weight or age under which antlerless deer may be shot in the open season is not unlawful, the action of the commission was an abuse of the discretion vested in it, and is arbitrary, oppressive, and capricious. Evidence received, subject to objection, fails to establish any basis for these charges. On the contrary, there appears, without contradiction, to have been careful, expert, and scientific performance by the commission of its duty as an agency of the Commonwealth to protect, propagate, manage, and preserve the game of the Commonwealth in accordance with its laws. The similar criticism, that the resolution is defective in omitting specific find-

ings of fact bringing the case within the powers delegated to the commission, is without substantial basis. It is evident that the General Assembly cannot enact laws which shall keep abreast of the constantly changing status of the deer of the Commonwealth.

The case presented is not one in which any private right is alleged to be infringed; and is not governed by such decisions as Holgate Brothers Co. et al. v. Bashore et al., 331 Pa. 255. The doctrine of United States v. Grimaud, 220 U. S. 506, which has been followed in other jurisdictions, such as People v. Soule, 238 Mich. 130, 213 N. W. 195, is applicable. This legislation for the conservation of public property is an exercise of the police power inherent in the sovereign. No private rights are involved. The commission makes no new law. It determines the conditions outlined within the limits of the law, and pursuant to such determination promulgates its orders. Such orders are not analogous to that class of laws, and the decisions under them dealing with commerce, public utilities, et cetera, where private interests are involved and hearings of those whose property or personal rights are involved are required. Such authorized administrative orders, auxiliary to such purely police regulations of public property, are no more open to trial than the legislation authorizing them. If this be correct, it is incompetent for the court to enter into the wisdom of the order, or reinvestigate the conditions which led the commission to arrive at its duly-announced judgment. Plaintiffs are allowed a privilege to be exercised under such conditions as may be imposed by the administrative agency of the Commonwealth. It is not competent for such licensees to invoke the interposition of the court to determine whether the duly-arrived-at and publicly-announced judgment of the Game Commission is, under the circumstances, wise. Such a practice would lead, as illustrated by the case before us, to confusion and would be practically impossible.

The offer made by plaintiffs as to the general conditions affecting the deer herd in the Commonwealth, and in the

several counties thereof, might well have been excluded. The evidence received thereunder, however, was illuminating and showed nothing to sustain plaintiffs' case.

It was argued on behalf of plaintiffs that the phraseology of the act left the question of the open season for deer to the unlimited discretion of the commission. Section 501 provides that the commission may, by appropriate rules and regulations and so forth, declare an open season when, in its opinion, such action is necessary to secure the maintenance of an adequate supply of such species, or when an unbalanced sex ratio exists which, in its opinion, should be corrected or when, in the opinion of the commission, such additional open game season will not jeopardize the future supply of game. It is said that the statute does not determine what limitations are placed upon the exercise of that power. In view of the whole act and the public policy involved regarding this property of the Commonwealth, this criticism does not appear to be valid. The proper management of the deer herd depends upon the duly-ascertained findings of expert biologists and is a matter of scientific investigation and conclusion which cannot be arrived at by any general law. The opinion of the commission, after such due investigation as the evidence shows was made, is a fact, which, when evidenced by the commission's resolution, becomes the basis for the application of the provisions of the law by the resolution involved in this case. We are unable to reach the conclusion urged on the part of plaintiffs that the fixing of the open season, as was done by the commission, for antlerless deer, is unconstitutional or obnoxious, or open to any valid objection.

It is not clear what rights any of the plaintiffs have which can or should be protected by the injunction prayed for. The result of the commission's action is to enlarge the privilege of every licensee. Practically, plaintiffs are asking that it be curtailed, at least in some of the counties, because in their opinion the conclusion of the commission, after full investigation, and with the concurrence and

approval of the organized sportsmen of the State, is not to their liking.

The police regulation and management of public property must necessarily be lodged in some administrative agency, subject only to the general limitations fixed by the representatives of the people. The wisdom of the regulations may not be attacked and reviewed in such manner as is attempted by these plaintiffs without showing some material disregard of the limitations, or some abuse of discretion, arbitrary or capricious. The whole record in this case fails to show any such vital defects. There is nothing to indicate that plaintiffs or any of them are or can be damaged by the action of the commission complained of.

The argument regarding the unconstitutionality of the act — because it delegates to the commission legislative functions—is somewhat inconsistent. It is admitted that all of the act is constitutional except the paragraph referring to deer without visible antlers. There is pointed out no logical basis by which the delegation of the power to fix an open season for antlerless deer is unconstitutional, and the power conferred on the commission by the same act to fix an open season for elk, for instance, is constitutional.

In the limited time allowed for consideration of this somewhat complicated case, it would seem that the only point of substantial doubt is: Was the failure of the commission to fix by its resolution a minimum weight or age of deer without antlers which might be killed such an omission as made its action in that regard unauthorized by law? As has been intimated, in our opinion it was not. The conclusion arrived at in the instant case is not in conflict but is in harmony with the decision of Judge Fox in this court, in Dietz et al. v. Biddle et al., 45 Dauph. 30.

Under all the circumstances of this case, the failure of plaintiffs to apply for the injunction more promptly impresses the court that they should be charged with such

laches as should warrant the court in refusing equitable relief at this late date. They allowed 59 days to elapse between the last legal publication of the commission's resolution and the filing of their bill. Should the injunction be granted as prayed for, it would necessitate the revision and publication of other regulations which would be difficult, if not practically impossible within the time remaining; the same is true if we are to allow a full discussion upon exceptions and a proper appeal to the appellate court, before the date fixed for the antlerless deer season. In the meantime the fixing and enforcement of game regulations for the current season would be in a chaotic condition. The uncertainty and the damage to the public interests would be disproportionate to any advantage to plaintiffs.

Upon this record as it stands at this time, the prayers of the bill and the injunction prayed for will be refused.

### Conclusions of law

1. The fixing of an open season for all antlerless deer without minimum weight or age requirements, open to all licensed hunters and covering all counties and areas without regard to the number of deer in each, does not violate the requirements of The Game Law and does not exceed the powers conferred upon the Game Commission.

2. Plaintiffs are guilty of laches in failing to take action until too late to allow for hearing, consideration, and decision by this court and orderly review thereof; and for other public action by the commission in case it be required. The bill was not filed until October 24th, and the case brought before the court November 10th and 11th. Only 18 days remained for consideration before the open season. This was due to the laches of plaintiffs.

Upon the consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

The injunction prayed for by plaintiffs' bill is refused, and the bill is dismissed at the cost of plaintiffs.