**Radu PACURARIU, M.D.; James Jarick, Sr.; James E. Jarick; David Mock; Mary Dee Mock and Dennison Township, By and Through Its Board of Supervisors, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Pennsylvania Game Commission and Georgetown Conservation Club, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 1999.

Decided Jan. 14, 2000.

---

John G. Dean, Scranton, for petitioners.

R. Douglas Sherman, Harrisburg, for respondent, PA Game Com'n.

Before SMITH, J., FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Radu Pacurariu, M.D., James Jarick, Sr., James E. Jarick, David Mock, Mary Dee Mock, and Dennison Township By and Through Its Board of Supervisors (Board) (collectively, Petitioners) have filed a Complaint in Equity and Petition for Review (Petition) in this court's original jurisdiction seeking an injunction prohibiting the Commonwealth of Pennsylvania, Pennsylvania Game Commission (Commission) and Georgetown Conservation Club (collectively, Respondents) from constructing a shooting range on State Game Lands 119 (SGL 119) in Dennison Township, Luzerne County. The Commission has filed a preliminary objection to the Petition in the nature of a demurrer, which is presently before this court for disposition.[1]

SGL 119 consists of approximately 16,000 square acres of land in Dennison Township. (Petition, para. 16.) The individual Petitioners here own property and reside along Tunnel Road, a county road that traverses SGL 119. (Petition, paras. 5–10, 16.) On February 25, 1999, at a special Commission meeting open to the public, Commissioner George Venesky presented a motion to approve Georgetown Conservation Club's construction of a shooting range on SGL 119 adjacent to Tunnel Road. (Petition, para. 17.) At the meeting, Commissioner Dennis Fredericks asked Commissioner Venesky why the Commission did not follow established procedures by studying the need for a shooting range in that location, the appropriateness of the location for such a dangerous activity and input from the neighboring public. (Petition, paras. 19–20.) Commissioner Venesky stated that feedback from the public was 100% positive and that the Georgetown Conservation Club would construct the shooting range at no expense to the Commission or to taxpayers. (Petition, para. 20.) Commissioner Venesky thus persuaded the Commission to pass his motion by a five-to-one vote. (Petition, para. 20.)

Petitioners learned about the shooting range through a March 4, 1999 newspaper article about the Commission's meeting. (Petition, paras. 21–22.) After reading the article, Dr. Pacurariu contacted Commissioner Venesky to express his concerns, and Commissioner Venesky advised Dr. Pacurariu not to worry about the shooting range because it would be constructed more than one mile from his property. (Petition, paras. 23–24.) The other individual Petitioners circulated a petition op-

---

1. We note that, in ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation*, 664 A.2d 208 (Pa.Cmwlth.1995). In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

posing the shooting range; the petition was signed by more than 100 township residents and forwarded to the Commission. (Petition, para. 25.) The public also sent more than 100 letters of protest to Vernon Ross, the Commission's Executive Director. (Petition, para. 26.) The Board invited Commissioner Venesky to attend a Board meeting to discuss the shooting range, but Commissioner Venesky refused. (Petition, para. 27.) However, Commissioner Venesky did meet with some of the individual Petitioners and explained that the Commission selected the location for the shooting range because of its convenience. (Petition, para. 28.)

At the Commission's regular June meeting, Commissioner Venesky made a motion for $8000.00 in appropriation money for the shooting range. (Petition, paras. 30–31.) In response to this request, Commissioner Robert J. Guilford stated: "[O]riginally [Venesky] said the range would be built at no cost. The local residents are not enthralled with the idea." (Petition, para. 32.) Thus, Commissioner Guilford voted against the motion. (Petition, para. 32.) Commissioner Samuel J. Dunkle stated: "I made a mistake back in February when I voted in favor of this range. We did not allow due process to take effect." (Petition, para. 33.) Roger Layman, from the Commission's Land Management Division, stated that, if the standard feasibility study were performed, it would show that the shooting range would not be needed. (Petition, para. 34.) Nevertheless, the Commission passed the motion by a four-to-three vote. (Petition, para. 35.)

Respondents are now proceeding with construction of the shooting range without permits from the township. Although a newspaper article quoted Commissioner Venesky as saying that the Commission applied for proper permits from the township, the Commission has not actually ap-plied for any permits and does not intend to do so. (Petition, paras. 39–41.) However, the Commission did inquire about the cost of permit applications. (Petition, para. 40.) In addition, the Commission stated in a letter to the township that, as to the local noise ordinance, the Commission would consider "the use of sound baffles to deaden sound around the range if the Township is willing to forego all opposition to the range." (Petition, para. 41.)

Respondents are also proceeding with construction of the shooting range despite potential danger to Petitioners. Dr. Pacurariu's Tunnel Road home is located within 150 yards of the proposed shooting range, down a slope, and is serviced by a well. (Petition, paras. 44, 50–51.) Shooters using the range will deposit thousands of lead bullets into the soil. (Petition, para. 50.) David Mock, a boy scout leader, hikes within 150 yards of the proposed shooting range with his boy scout troop. (Petition, para. 45.) The Rails for Trails hiking trail is within a few feet of the proposed shooting range. (Petition, para. 46.)

On August 25, 1999, Petitioners filed their Petition with this court, seeking an injunction to prohibit construction of the shooting range until Respondents abide by the Commission's "standard due diligence feasibility protocols in determining the location of the proposed shooting range" and until Respondents apply for permits from the township. At the same time, Petitioners filed an Application for Expedited Consideration of Request for Injunctive Relief (Application). This court granted the Application and scheduled a September 2, 1999 hearing on Petitioners' request for a preliminary injunction.

On September 13, 1999, the Commission filed a preliminary objection to the Petition in the nature of demurrer.[2] On September 24, 1999, this court issued a memoran-

**2.** The Commission states: (1) SGL 119 is not subject to regulation by counties or municipalities; (2) the shooting range is not within a designated safety zone or otherwise prohibited; (3) it is premature to determine whether the shooting range violates noise ordinances; and (4) the establishment of the shooting range is rationally related to the promotion of sport hunting in Pennsylvania.

dum opinion denying Petitioners' request for a preliminary injunction. The Commission's demurrer is now before this court for disposition.

## I. Local Ordinances

The Commission first argues that the Commission is not subject to the township's ordinances. Thus, according to the Commission, it need not apply for permits from the township. Moreover, the Commission maintains that it is premature to determine whether the shooting range would violate local noise ordinances.

Section 721 of the Game and Wildlife Code, 34 Pa.C.S. § 721 (emphasis added), states as follows:

> The administration of all lands or waters owned, leased or otherwise controlled by the [C]ommission shall be under the sole control of the director, and the [C]ommission shall promulgate regulations consistent with the purpose of this title for its use and protection as necessary to properly manage these lands or waters. *The acquisition, use and management of such lands or waters owned, leased or otherwise controlled by the [C]ommission ... shall not be subject to regulation by counties or municipalities.*

The Commission asserts in its brief that the last sentence of this section was added in 1990 in response to our supreme court's holding in *Department of General Services v. Ogontz Area Neighbors Association*, 505 Pa. 614, 483 A.2d 448 (1984).

■ In *Ogontz*, our supreme court held that, absent a clear legislative intent to give a state agency preemptive land use powers, the state agency must comply with local zoning and land use regulations. Here, section 721 specifically states that the use and management of land controlled by the Commission is governed by regula-

tions promulgated by the Commission and is *not* subject to local regulation. In view of this clear legislative intent in section 721 to give the Commission power to regulate land under its control, we agree with the Commission that the Petition fails to state a cause of action based on the Commission's failure to apply for permits from the township.

■ However, we do not agree with the Commission that it is premature to determine whether the shooting range would violate local noise ordinances. Sections 1 and 2 of the Act of June 2, 1988, P.L. 452, *as amended*, 35 P.S. §§ 4501 and 4502 (hereinafter, Noise Pollution Act) (emphasis added), state that owners of shooting ranges are immune from any action relating to noise or noise pollution, provided that the owners "are in compliance with any applicable noise control laws or ordinances extant *at the time construction of the range was initiated.*" Because the Noise Pollution Act specifically states that, for owners to avoid liability, a shooting range must comply with noise control ordinances "at the time construction of the range [is] initiated," it is not premature to determine whether the shooting range here complies with local noise ordinances.[3] Thus, the Petition states a cause of action to the extent that it seeks compliance with local noise ordinances.

## II. "Safety Zone"

■ The Commission next argues that the shooting range does not violate the "safety zone" provisions of section 2505 of the Game and Wildlife Code, 34 Pa.C.S. § 2505.

Section 2505(a) of the Game and Wildlife Code, 34 Pa.C.S. § 2505(a), states, in pertinent part, as follows:

---

3. Indeed, a noise control ordinance might prohibit the use of firearms during certain days of the year or during certain hours of the day. The Commission's regulation at 58 Pa. Code § 135.181 sets the hours for the opera-

tion of a shooting range located on state game lands. It is an easy matter to determine whether those hours of operation comply with the hours set forth in a local ordinance.

[I]t is unlawful for any person, other than the lawful occupant, while ... pursuing any privilege granted by this title ... to discharge, for any reason, any firearm, arrow or other deadly weapon within or through a safety zone ... without the specific advance permission of the lawful occupant thereof.

Section 2505(c)(1) of the Game and Wildlife Code, 34 Pa.C.S. § 2505(c)(1) (emphasis added), defines the term "safety zone" as:

[T]he area within 150 yards around and that area which is below the highest point of any occupied dwelling house, residence, or other building or camp occupied by human beings, or any barn, stable, *or other building used in connection therewith* or any attached or detached playground of any school, nursery school or day-care center.

The Petition in this case avers that Dr. Pacurariu's "home is within 150 yards of where the Game Commission's survey crews have staked out the shooting range." (Petition, para. 44.) As stated, we must accept as true all well-pleaded facts in the Petition. Thus, the Petition states a cause of action based on the provisions of section 2505 of the Game and Wildlife Code.[4]

**4.** The Commission asserts in its brief that, during the preliminary injunction hearing, Petitioners stipulated that, although Dr. Pacurariu's *property* is within 150 yards of the proposed shooting range, his *residence* is 500 yards away. However, the record before this court does not contain a transcript of the preliminary injunction hearing.

Moreover, assuming that the Commission is correct, Dr. Pacurariu could easily create a "safety zone" by building a shed on his property that is within 150 yards of the shooting range. If the doctor does so, then the shooting range would be within 150 yards of an "other building used in connection" with a residence, and the shooting range could not be used without violating section 2505.

**5.** At the preliminary injunction hearing, Petitioners presented the Affidavit of Edward Vogue, a former Commissioner. (Affidavit, Exh. P–2.) Vogue states in the Affidavit that, during his tenure on the Commission from 1987 to 1995, the Commission followed certain procedures before voting on the construc-

## III. Commission's Regulations

The Commission's third argument is that the Commission has not violated its own regulations by failing to perform a feasibility study involving the public.

As a preliminary matter, we note that the Petition does *not* allege that the Commission violated its own *regulations*. Rather, the Petition alleges that the Commission "did not follow [its] own in-house feasibility rules." (Petition, para. 52.) Indeed, the Petition asserts that the Commission's *established practices and procedures* require the performance of studies to assess the need for a shooting range in a given location, the appropriateness of the proposed location *and public input*.[5] (Petition, para. 19.) Thus, in effect, Petitioners contend that, through established practices and procedures, the Commission has a *policy* of requiring public input,[6] and the Commission failed to comply with that policy in this case.[7]

■ Although an agency's policy lacks the force of law, "[r]eviewing courts have the discretion whether to accept or reject an agency's general statement of policy

tion of a new shooting range on state game lands. The procedures included an assessment of the need for the shooting range, the cost of the range *and public input*. (Affidavit, para. 3.)

**6.** Section 102(13) of the Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1102(13), defines a "statement of policy" as "any document ... promulgated by an agency which sets forth substantive or procedural ... rights ... of the public...." Section 102(9) of the Act, 45 P.S. § 1102(9), defines a "document" as "any ... rule ... prescribed ... by ... this Commonwealth." The word "prescribe" means "to lay down authoritatively as a guide, direction, or rule of action." *Webster's Third New International Dictionary* 1792 (1986).

**7.** The Petition avers that, at the February 25, 1999 meeting, Commissioner Fredericks asked why the established procedures were not followed and that the response was that public input was 100% positive. (Petition, para. 20.)

depending on how accurately· [it] reflects the meaning of a statute." *Eighty-Four Mining Co. v. Three Rivers Rehabilitation, Inc.*, 554 Pa. 443, 453, 721 A.2d 1061, 1066 (1998). The relevant statutory provision in this case is section 328(a) of the Game and Wildlife Code, 34 Pa.C.S. § 328(a) (emphasis added), which states: "The [C]ommission shall implement policies and programs *to improve its relationship with the general public* and with its licensees in accordance with its strategic plan." [8]

■ At this stage of the proceedings, we must accept the well-pleaded fact that the Commission has a policy of considering public input when deciding whether to approve construction of a shooting range on state game lands. Such a policy is consistent with section 328. Thus, we have discretion to accept the Commission's policy as binding on the Commission. Given that fact, we cannot say that Petitioners have failed to state a cause of action regarding the need for public input in this case.[9]

■ Moreover, Petitioners argue in their brief that their Petition states a cause of action against the Commission for violation of the regulations at 4 Pa.Code

8. Section 328 became effective on December 21, 1998. It seems that the Commission has not yet implemented any formal policies or programs to improve its relationship with the general public in accordance with its strategic plan. However, under section 328(e), the Commission must make a written report to the Senate and House of Representatives *by January 31, 2000* regarding its policies and programs to improve its relationship with the general public.

9. *In her single-judge opinion following the preliminary injunction hearing, Judge Lead-better addressed whether Petitioners have a clear right to relief on this issue. Her opinion states:* "Wise as it may be to invite public comment and take local views into consideration before embarking on a project such as this, there is simply no legal mandate that the Commission do so. Nor was any evidence presented that the Commission has violated any of its own policies in the manner in which it made the decision to establish a shooting range on [SGL 119]." *Pacurariu v.*

§§ 1.41(d) and 1.53(c). The regulation at 4 Pa.Code § 1.41(d) states:

> Public notice in the manner provided by § 1.53 (relating to notice) shall be given at least 3 days in advance of an agency's first regular meeting of each calendar or fiscal year and at least 24 hours in advance of a special meeting or rescheduled meeting.

The regulation at 4 Pa.Code § 1.53(c) provides, in pertinent part, that: "The agency shall supply a copy of the notice of an open meeting directly to individuals with a direct and substantial interest in the proceedings of the agency...." Here, Petitioners aver that the Commission failed to inform the Board or neighboring property owners of the special meeting on February 25, 1999. (Petition, para. 18.) Therefore, Petitioners have stated a cause of action against the Commission under 4 Pa.Code §§ 1.41(d) and 1.53(c).[10]

## IV. Arbitrary Action

Finally, Petitioners contend that their Petition should not be dismissed because it states a cause of action against the Commission for taking arbitrary action in ap-

*Pennsylvania Game Commission,* (No. 482 M.D.1999, filed September 4, 1999), slip op. at 3. Although Petitioners may not have a clear right to relief on the matter, Petitioners have stated a cause of action. As this case goes forward, Petitioners must present evidence that the Commission has a policy requiring public input in approving the construction of the shooting range and that the Commission violated that policy here.

10. In her single-judge opinion, Judge Lead-better stated in dictum that Petitioners expressed their views to the Commission "before any action was undertaken ... so any defect in notice was harmless." *Pacurariu*, slip op. at 4. It may be true that Petitioners succeeded in expressing their views to the Commission before Respondents began construction of the shooting range. However, that is irrelevant to the issue presented here. Our only task at this stage of the proceedings is to determine whether the Petition states a cause of action under 4 Pa.Code §§ 1.41(d) and 1.53(c).

proving the construction of the shooting range.

■ Courts will reverse an agency's discretionary action only if it was made in bad faith or if it constituted a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Rohrbaugh v. Pennsylvania Public Utility Commission,* 556 Pa. 199, 727 A.2d 1080 (1999). Here, the Petition alleges that: (1) the Commission approved construction of the shooting range without performing any study and without consulting the public, in violation of established practices and procedures; (2) Commissioner Venesky misled the Commission about public support for the shooting range and its cost to taxpayers; (3) the Commission approved the shooting range because of its convenience for members of the Georgetown Conservation Club; (4) the shooting range is within 150 yards of someone's residence, a violation of state law; and (5) the shooting range is close to hiking trails used by the public. Based on these allegations, we believe that the Petition states a cause of action against the Commission for an abuse of discretion in approving the construction of the shooting range.[11]

Based on the foregoing, we sustain the Commission's demurrer to the extent that the Petition avers that the Commission must obtain permits from the township to construct the shooting range. Otherwise, we overrule the preliminary objection.

### ORDER

AND NOW, this 14th day of January, 2000, the preliminary objection filed by the Commonwealth of Pennsylvania, Pennsylvania Game Commission (Commission) is sustained only to the extent that the Petition for Review filed by Radu Pacurariu, M.D., James Jarick, Sr., James E. Jarick, David Mock, Mary Dee Mock, and Dennison Township By and Through Its Board of Supervisors avers that the Commission must obtain local permits to construct the shooting range. Otherwise, the Commission's preliminary objection is overruled. Respondents shall file an answer to the Petition for Review within thirty days of the date of this order.

---

11. Judge Leadbetter states in her single-judge opinion that Petitioners "failed to state a cause of action arising from the Commission's allegedly arbitrary decision." *Pacurariu,* slip op. at 4. Judge Leadbetter explains that Petitioners failed to allege that the Commission's arbitrary conduct deprived them of a property interest. *Id.* at 5. However, Petitioners have alleged that they are property owners near the proposed shooting range and that the range poses a danger to Petitioners in the use and enjoyment of their property. Thus, Petitioners have alleged facts to establish a property interest and a deprivation of that interest. Petitioners need not specifically allege that the Commission's arbitrary conduct deprived them of a property interest; such an averment would constitute a conclusion of law.