The UNIFIED SPORTSMEN OF PENNSYLVANIA By and through THEIR MEMBERS, Individually and Collectively, and Individual Plaintiffs (John F. Gilmore through and including Florence Reeder totaling 13,216 plaintiffs As evidenced by Exhibit "A" hereto), Petitioners

v.

The PENNSYLVANIA GAME COMMISSION (PGC), The Pennsylvania Department of Conservation and Natural Resources (DCNR), Edward Rendell, Governor of Pennsylvania (in his official capacity only), the Commissioners of the Pennsylvania Game Commission (all in their official capacity only) and Richard DiBerardinis (in his official capacity only), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2006.

Decided July 20, 2006.

Don Bailey, Harrisburg, for petitioners.

R. Douglas Sherman, Sr. Deputy Attorney General and Susan J. Forney, Chief Deputy Attorney General, Harrisburg, for respondents.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Before this Court in our original jurisdiction are the preliminary objections of the Pennsylvania Game Commission (Game Commission), the Pennsylvania Department of Conservation and Natural Resources (DCNR) and certain Commonwealth officers [1] (collectively, Respondents) to a Complaint/Request for Writ of Mandamus filed by the Unified Sportsmen of Pennsylvania and its members (Sportsmen). The Complaint seeks an order directing Respondents to provide the data and information on which the Game Commission relies in setting "harvest" [2] figures for Pennsylvania's deer population. For the reasons that follow, Respondents' preliminary objections are sustained in part, and overruled in part.

Through their Complaint, Sportsmen seek "consideration ... of certain alleged actions and policies by [Respondents]" as they relate to attempts to reduce Pennsylvania's deer population. Compl. at p. 1. Sportsmen identify themselves as a group of Pennsylvania hunters and outdoorsmen whose membership exceeds 40,000 individuals. Sportsmen assert standing to bring suit "on behalf of their constitutionally and statutorily recognized rights as outdoorsmen and hunters ... asserting that they have been expressly entrusted by the Commonwealth with the responsibility to protect and preserve Pennsylvania's deer herd." Compl. at p. 2.

In the "Introductory Statement" of their Complaint, Sportsmen further explain:

The gravaman [sic] of this [C]omplaint is that [Respondents] have not only failed in their duties and responsibilities to preserve and protect the deer herd as a ward of, and for, the citizens of Pennsylvania and particularly the sportsmen and women of Pennsylvania, but that [Respondents] have intentionally acted to destroy and diminish Pennsylvania's deer herd, in contravention of law, below a reasonable or rational level. Further, ... [Respondents] have[,] in their official capacities, intentionally embarked upon the promulgation of policies designed to deplete and diminish the deer herd in support and pursuit of other political and policy interests which are in conflict with, and in derogation of, the intent and purpose of established Pennsylvania law to the contrary. [Sportsmen] seek the intervention of this Honorable Court to require [R]espondents through a writ of mandamus ... to reveal the basis of their decisions affecting the well-being of the [deer] herd....

Compl. at p. 2–3.

Sportsmen aver the Game Commission possesses a mandatory duty to manage wildlife in accordance with Sections 322(a), (c)(11)-(13) of the Game and Wildlife Code (Game Code), 34 Pa.C.S. §§ 322(a), (c)(11)-(13), and it lacks discretion to avoid these enumerated duties. Those Sections state, as relevant:

**§ 322. Powers and duties of commission**

(a) **Duties.**—It shall be the duty of the commission to protect, propagate, man-

---

1. The Commonwealth officers are Edward G. Rendell, Governor of Pennsylvania, and Michael DiBerardinis, Secretary of DCNR. The Complaint also names as Respondents the eight Commissioners of the Game Commission.

2. A 'harvest' refers to the killing of a deer and its lawful removal from a hunting field or forest. *See State v. Bradley*, 375 N.J.Super. 24, 866 A.2d 242, 245 n. 1 (2004).

age and preserve the game or wildlife of this Commonwealth and to enforce, by proper actions and proceedings, the laws of this Commonwealth relating thereto.

\* \* \* \*

**(c) Specific powers and duties.**—In order to administrate and enforce this title, the commission through proper action shall:

\* \* \* \*

(11) Collect, classify and preserve such statistics, data and information as in its judgment will tend to promote the object of this title and take charge of and keep all reports, books, papers and documents which shall, in the discharge of its duties, come into its possession or under its control.

(12) Take any necessary action to accomplish and assure the purposes of this title.

(13) Serve the interest of sportsmen by preserving and promoting our special heritage of recreational hunting and furtaking by providing adequate opportunity to hunt and trap the wildlife resources of this Commonwealth.

*Id.*[3]

In carrying out these duties, Sportsmen allege, the Game Commission must base its decisions on scientific evidence rather than arbitrary speculation or an undisclosed political agenda. Compl. at ¶ 11. Sportsmen aver the Game Commission never conducted a reliable or scientific census of Pennsylvania's deer herd at any time in its history. Rather, they allege,

[B]ased upon information and belief, in seeking to trade political decisions encouraging increased forest growth at the expense of the deer herd, the [Game Commission], in conjunction with the DCNR and the other Respondents in their official capacities, have engaged in a policy not guided by information or scientific knowledge but rather have engaged in a consistent year in year out policy of engineering the rapid decimation of Pennsylvania's deer herd from an estimated 1.5 million to less than half that number.

Compl. at ¶ 13.

In carrying out their policy objectives, Sportsmen aver, Respondents intentionally excluded the public, particularly hunters and sportsmen, who are recognized by law "as partners and participants in the protection and preservation of the Pennsylvania deer herd" from "a proper role in the formulation and application of public policies" relating to the herd. Compl. at ¶¶ 14–15.

Sportsmen seek an order directing the Game Commission to disclose the information and sources of information on which they rely in setting deer harvest figures. Sportsmen also ask this Court to set a discovery schedule to allow them to collect information. In addition, they ask this Court to allow the parties to engage in a briefing schedule to generate findings of fact and conclusions of law concerning the parties' respective rights under the Pennsylvania Constitution and the Game Code. Alternatively, Sportsmen seek a declaration of the parties' rights and duties under

---

**3.** Sportsmen also cite Article I, § 27 of the Pennsylvania Constitution, often referred to as the "Environmental Rights Amendment." It states: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people." PA. CONST. art. I, § 27.

122

Section 102 of the Game Code, 34 Pa.C.S. § 102.

Respondents filed preliminary objections, asserting: Sportsmen lack standing to bring this action; the Complaint is legally insufficient to state a claim for relief; and, DCNR, its Secretary and the Governor are not proper parties to this action. These preliminary objections are now before us for disposition.

## I. Standing

Respondents first argue the Complaint should be dismissed because Sportsmen lack standing to bring this action. Specifically, they assert, Sportsmen do not possess an interest in the subject matter of this litigation separate and apart from that of the general public. Respondents contend the deer herd is owned exclusively by the Game Commission, and it alone is authorized to manage the herd. They argue Sportsmen do not allege harm to any protected interest by virtue of the Game Commission's deer management program, and, absent such, they lack standing. We disagree.

The concept of "standing," in its accurate legal sense, is concerned only with the question of who is entitled to make a legal challenge to the matter involved. *Pa. Nat'l Mut. Cas. Ins. Co. v. Dep't of Labor & Indus., Prevailing Wage Appeals Bd.*, 552 Pa. 385, 715 A.2d 1068 (1998); *Pa. Game Comm'n v. Dep't of Envtl. Res.*, 521 Pa. 121, 555 A.2d 812 (1989). Standing may be conferred by statute or by having an interest deserving of legal protection. *Pa. Game Comm'n.* As a general matter, the core concept of standing is that a person who is not adversely affected by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge. *Id.* In determining whether a party has standing, a court is concerned only with the question of who is entitled to make a legal challenge and not the merits of that challenge. *In re T.J.*, 559 Pa. 118, 739 A.2d 478 (1999).

To possess standing, a party must have an interest in the controversy that is distinguishable from the interest shared by other citizens. *Sierra Club v. Hartman*, 529 Pa. 454, 605 A.2d 309 (1992). A party possesses standing if he has a "substantial, direct, and immediate interest" in the subject matter of the litigation. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Recently, in *Pennsylvania Bankers Ass'n v. Department of Banking & Trumark Financial Credit Union*, 893 A.2d 864 (Pa.Cmwlth.2006) (*en banc*), we elaborated on the elements of the "substantial-direct-immediate" test, explaining:

To establish an 'aggrieved' status, a party must have a substantial interest, that is, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. Also, an interest must be direct, which 'means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains.' Further, the interest must be immediate and not a remote consequence of the judgment, a requirement addressing the nature of the causal connection.

*Id.* at 870 (citation omitted) (emphasis deleted).

"An association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself; the association must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action." *Malt Beverages Distribs. Ass'n v. Pa. Liquor*

*Control Bd.,* 881 A.2d 37, 41 (Pa.Cmwlth. 2005), *petition for allowance of appeal denied,* 586 Pa. 775, 895 A.2d 1264 (2006).

Of particular import here, the United States Supreme Court holds "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562–63, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Indeed, in *Sierra Club v. C.B. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Court stated: "Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *Id.* at 734, 92 S.Ct. 1361. *See also Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (plaintiffs alleged sufficient "injury in fact" in that whale watching and studying by organization's members would be adversely affected by continued whale harvesting); *Franklin Twp. v. Dep't of Envtl. Res.,* 500 Pa. 1, 452 A.2d 718 (1982).

■ Here, we conclude Sportsmen have standing based on two theories. First, standing is conferred by statute. More particularly, pursuant to the express language of the Game Code, the Game Commission is required to *"[s]erve the interest of sportsmen* by preserving and promoting our special heritage of recreational hunting and furtaking *by providing adequate opportunity to hunt and trap the wildlife resources of this Commonwealth."* 34 Pa. C.S. § 322(c)(13) (emphasis added). Because the Game Code clearly recognizes the interests of sportsmen and protects an adequate opportunity to hunt and trap the Commonwealth's wildlife resources, standing is conferred by statute.

■ In addition, standing is present under the traditional substantial-direct-immediate test. First, as to whether their interest is "substantial," Sportsmen aver the Game Commission's policies and practices interfere with their ability to hunt as those policies and practices effectively reduce the state's deer population. Interference with Sportsmen's ability to hunt not only hinders their ability to perform a recreational activity, but also affects their ability to harvest deer for use as a food source. Sportsmen's interest in hunting and trapping deer surpasses the abstract interest of the public in general.

Next, as to whether their interest is "direct," Sportsmen aver the Game Commission's alleged arbitrary policies, and its failure to abide by the mandates of the Game Code, caused a dramatic decline in the state's deer population. As such, Sportsmen adequately aver a causal connection between the action challenged, the Game Commission's alleged improper actions, and the harm suffered, a depletion in the deer population resulting in an adverse impact on the ability to hunt.

■ Finally, as to whether their interest is "immediate," Sportsmen aver the Game Commission's policies and practices harm them in a way that is not speculative or remote. Indeed, they allege those policies and practices led, and are leading, to the rapid decimation of the state's deer population. An immediate interest is shown "where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or the constitutional guarantee in question." *George v. Pa. Pub. Util. Comm'n,* 735 A.2d 1282, 1286 (Pa.Cmwlth.1999) (*en banc*); *see also Beverly Healthcare–Murrysville v. Dep't of Pub. Welfare,* 828 A.2d 491, 496–97 (Pa.Cmwlth.2003) ("An interest is

'immediate' when the protection of the type of asserted interest is among the policies underlying the legal rule relied on by the person claiming to be aggrieved.") The interest Sportsmen seek to protect here, the ability to hunt and trap the Commonwealth's wildlife resources, is clearly among the interests recognized by the Game Code. *See* 34 Pa.C.S. § 322(c)(13). Thus, Sportsmen possess an immediate interest.

For these reasons, we conclude Sportsmen aver sufficient facts to establish standing at this stage. Therefore, we overrule Respondents' preliminary objection to standing.[4]

## II. Demurrer

Respondents next challenge the legal sufficiency of the Complaint. They assert consideration of any claim raised by Sportsmen must begin with the identification of two clear legal principles: Pennsylvania's deer herd belongs to the Game Commission as an independent agency of the Commonwealth, controlled and regulated in accordance with the Game Code; and, the Game Commission is vested with exclusive authority to manage the deer population. Respondents also argue there is no liberty or property interest implicated by sport hunting; rather, the right to hunt is a privilege conferred by the legislature. *Pa. Game Comm'n v. Marich*, 542 Pa. 226, 666 A.2d 253 (1995).

Based on these principles, Respondents argue, the Game Commission owns the deer at issue here and has exclusive authority to manage them. On the other hand, Respondents maintain, Sportsmen do not own the deer, they have no authority to manage them, and they possess no protected interest. As such, Respondents assert, Sportsmen cannot bring suit to challenge the Game Commission's deer management decisions. Respondents further contend mandamus cannot lie to compel the Game Commission to exercise its discretionary game management policies in a manner other than what it deems appropriate.

At the outset, we note, in reviewing a preliminary objection in the nature of a demurrer, all material facts as set forth in the complaint, as well as all inferences reasonably deducible from those facts, must be accepted as true. *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740 (2005). "Cognizant of this factual bias in a plaintiff's favor, we must determine whether there is no potentiality of recovery. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling

---

4. Further, contrary to Respondents' assertions, the Supreme Court of South Carolina's decision in *Sea Pines Ass'n for Protection of Wildlife, Inc. v. South Carolina Department of Natural Resources & Community Services Associates, Inc.*, 345 S.C. 594, 550 S.E.2d 287 (2001) and the Court of Appeals of Ohio's decision in *In Defense of Deer v. Cleveland Metroparks*, 138 Ohio App.3d 153, 740 N.E.2d 714 (2000), do not compel a different result at this stage. In *Sea Pines*, the South Carolina Supreme Court determined certain wildlife protection groups failed to establish standing to challenge a state agency's decision to reduce the state's deer herd *based on their failure to present sufficient evidence during the* *course of a non-jury trial.* Here, however, Respondents seek dismissal at the pleading stage, rendering application of *Sea Pines* problematic.

Moreover, the Court of Appeals of Ohio's decision in *In Defense of Deer* is distinguishable. There, the Ohio Court determined a wildlife protection group lacked standing to bring an action challenging a state agency's grant of a deer management permit to a third-party to authorize the controlled killing of 300 deer. Unlike the association in *In Defense of Deer*, however, here Sportsmen do not seek to enjoin issuance of a permit; rather, they seek the information the Game Commission utilizes in setting deer harvest figures.

it." *Id.* at 351–52, 888 A.2d at 749 (citation omitted).

 Through their Complaint, Sportsmen purportedly state claims for mandamus and declaratory relief. As to mandamus relief, we note, a proceeding in mandamus is an extraordinary action at common law, designed to compel the performance of a ministerial act or mandatory duty, as opposed to a discretionary act. *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287 (2001). We may issue a writ of mandamus only where the petitioner has a clear legal right to enforce the performance of a ministerial act or mandatory duty, the defendant has a corresponding duty to perform the act and the petitioner has no other adequate or appropriate remedy. *Id.*

 With regard to declaratory relief, we note, petitions for declaratory judgments are governed by the provisions of the Declaratory Judgments Act (DJA), 42 Pa.C.S. §§ 7531–7541. The granting of a petition for declaratory judgment is a matter within the sound discretion of a court of original jurisdiction. *Ingram v. Newman,* 830 A.2d 1099 (Pa.Cmwlth.2003). The DJA is remedial. 42 Pa.C.S. § 7541(a). Its purpose is to afford relief from uncertainty with respect to rights, status, and other legal relations, and is to be liberally construed and administered. *Ingram.* A petitioner whose rights, status, or other legal relations are affected by a statute may have determined any question of construction arising under that statute and obtain a declaration of rights, status, or other legal relations. 42 Pa.C.S. § 7533.

Here, Respondents aptly note Sportsmen's Complaint is "far from a model of clarity." Respondents' Br. at 2. As a result, it is difficult to discern the precise nature of the legal theory upon which Sportsmen rely. As explained more fully below, because of the ambiguous nature of the Complaint, we must require Sportsmen to refine their pleading.

Based on the provisions of the Game Code cited in the Complaint, 34 Pa.C.S. §§ 322(a), (c)(11)-(13), Sportsmen *could* state claims for relief based on the Game Commission's alleged failure to protect and preserve game, serve the interests of sportsmen, and provide an adequate opportunity to hunt and trap. *Id.*

In their prayer for relief, however, Sportsmen request this Court:

a. *Order Respondents to provide the information* and sources of information upon which they rely to set harvest figures for the Pennsylvania deer and decide deer population computations and to make this information available to [Sportsmen] and to the public.

b. *Set a discovery schedule and permit [Sportsmen] to conduct discovery,* including access to [Game Commission] and DCNR staff for deposition evidence and documents to a reasonable extent sufficient to allow [Sportsmen] to collect and acquire information. . . .

c. *Allow the parties to engage in a briefing schedule* whereby the parties could generate findings of fact and conclusions of law as to what the respective rights and positions of the parties are under the Constitution of Pennsylvania and the provisions of title *34 Pa.C.S.A. § 102 et seq* of the [Game Code].

d. In the alternative[,] *provide the parties hereto with the requisite declaratory relief* as to the rights and duties of the respective parties pursuant to him [sic] *34 Pa.C.S.A. § 102.*

Compl. at p. 8–9 (emphasis added).

 The difficulty with Sportsmen's Complaint stems from the lack of relationship between the Game Commission's stat-

utory duties and the relief requested. More specifically, the Game Code imposes certain duties on the Game Commission, such as the duty to protect and preserve game. Also, the Game Code requires the Commission to serve the interests of sportsmen by, among other things, providing an adequate opportunity to hunt and trap. However, Sportsmen do not pray that any of these things occur. Rather, they ask for disclosure of information, discovery, a briefing schedule and an unspecified declaration of rights.

Stated conversely, if Sportsmen received the remedies requested, it is unclear what effect the relief would have on the Commission's statutory duties. Indeed, there is nothing in the Complaint that avers a disclosure of information will preserve and protect game or provide an adequate opportunity to hunt, nor is such a causal connection obvious.

 In addition, the purpose of mandamus is not to establish legal rights but to enforce those rights already existing beyond peradventure. *Loomis v. Bd. of Prob. & Parole*, 878 A.2d 963 (Pa.Cmwlth. 2005); *Aviles v. Dep't of Corr.*, 875 A.2d 1209 (Pa.Cmwlth.2005). Here, the remedies requested appear designed to estab-

lish rights, which is not an appropriate use of a cause of action in mandamus.

 Similarly, where a body is clothed with deliberative or discretionary powers and has exercised such powers according to its discretion, mandamus will not lie to compel revision or modification of a decision. *Konya v. District Attorney of Northampton County*, 543 Pa. 32, 669 A.2d 890 (1995). The Game Commission possesses discretion in certain policy matters, and Sportsmen cannot state a claim in mandamus for review of those policy decisions.[5]

Further, although Sportsmen claim they are seeking declaratory relief, the section of the Game Code they cite in support of that claim, 34 Pa.C.S. § 102, is the Game Code's "Definitions" section. It is not clear what rights we could declare under the statute's "Definitions." Therefore, the Complaint does not sufficiently set forth a claim for declaratory relief.

 In sum, based on the ambiguous nature of Sportsmen's pleading, it is not possible to discern a legal theory to support the relief requested. Therefore, we

---

5. Moreover, contrary to their assertions, Sportsmen do not state a claim for mandamus based on *Pacurariu v. Commonwealth*, 744 A.2d 389 (Pa.Cmwlth.2000). In *Pacurariu,* several petitioners filed suit in our original jurisdiction challenging the Game Commission's proposed construction of a shooting range on state game lands near their homes. The petitioners alleged the Game Commission approved construction of the shooting range without providing residents an opportunity to be heard, in violation of the Commission's policy requiring public input in determining the feasibility of a chosen site. In rejecting the Commission's demurrer to this claim, we held:

> At this stage of the proceedings, we must accept the well-pleaded fact that the [C]ommission has a policy of considering public

input when deciding whether to approve construction of a shooting range on state game lands. Such a policy is consistent with [S]ection 328 [of the Game Code (requiring Commission to implement policies to improve its relationship with the public) ]. Thus, we have discretion to accept the [C]ommission's policy as binding on the [C]ommission. Given that fact, we cannot say [the petitioners] have failed to state a cause of action regarding the need for public input in this case.

*Id.* at 395. Here, unlike in *Pacurariu*, Sportsmen do not aver the Game Commission has a specific policy requiring public input regarding its deer management decisions or the Game Commission violated any such policy. Thus, *Pacurariu* is inapposite.

sustain Respondents' demurrer.[6]

 Nevertheless, we decline to dismiss Sportsmen's action at this stage. To that end, we note, "amendment of a complaint should be freely allowed and a claim ought not be jeopardized by minor defects in pleading." *Lutz v. Springettsbury Twp.*, 667 A.2d 251, 254 (Pa.Cmwlth.1995). Indeed, Pennsylvania Rule of Civil Procedure 1033, titled "Amendment," states, in pertinent part, "[a] party ... by leave of court, may at any time ... amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense." Pa. R.C.P. No. 1033.

 "[R]ule [1033] has long been interpreted to call for the liberal grant of leave to amend pleadings in order to allow full development of a party's theories and averments." *Newcomer v. Civil Serv. Comm'n of Fairchance Borough*, 100 Pa. Cmwlth. 559, 515 A.2d 108, 111 (1986). Where the law may permit recovery under some theory, leave to amend should be liberally granted. *Ress v. Barent*, 378 Pa.Super. 397, 548 A.2d 1259 (1988). As such, where a trial court sustains a demurrer, "[t]he right to amend should not be withheld where there is some reasonable

possibility that amendment can be accomplished successfully." *Otto v. Am. Mut. Ins. Co.*, 482 Pa. 202, 205, 393 A.2d 450, 451 (1978).

Here, because it appears Sportsmen *could* state a claim for relief, we will afford them an opportunity to file an amended complaint rather than dismiss the action at this stage.

Additionally, contrary to Respondents' assertions, *Lehman v. Pa. Game Comm'n*, 34 Pa. D. & C. 662 (Pa.Com.Pl.1939), does not compel dismissal of the Complaint at this stage. In *Lehman*, a group of hunters challenged a Game Commission resolution that established an open season for the hunting and killing of antlerless deer for a six-day period so as to reduce the size of the Commonwealth's deer herd. After the close of the pleadings, two days of hearings, submission of briefs addressing the merits of the claims and oral argument, the Dauphin County Court of Common Pleas sitting as the Commonwealth Court issued an adjudication in which it rejected the hunters' challenge. The Court stated:

[T]here appears, without contradiction, to have been careful, expert, and scientific performance by the [C]ommission of its duty as an agency of the Commonwealth to protect, propagate, manage,

6. Based on our decision to sustain Respondents' demurrer, we need not address their alternative argument that if the information Sportsmen seek is "public information," an available remedy exists under the statute commonly known as the Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.9.

Although it is not entirely clear at this stage, if the information sought by Sportsmen is the type of information covered by the Right to Know Act, the availability of this statutory remedy would preclude mandamus relief. *See Bald Eagle Area Sch. Dist. v. County of Centre, Bd. of Assessment Appeals*, 745 A.2d 689 (Pa.Cmwlth.1999) (where statutory

remedies are available mandamus will not lie); *see also Wiley v. Woods*, 141 A.2d 844, 393 Pa. 341 (1958) ("right to know" statute provides exclusive remedy to a person denied the right of examination and inspection of public records, precluding resort to mandamus). Similarly, the existence of this statutory remedy would likely preclude the availability of declaratory relief. *Pittsburgh Palisades Park, LLC v. Pa. State Horse Racing Comm'n*, 844 A.2d 62 (Pa.Cmwlth.2004) (*en banc*) (declaratory judgment action is not optional substitute for established or available remedies and should not be granted where more appropriate remedy is available).

and preserve the game of the Commonwealth in accordance with its laws....

The proper management of the deer herd depends upon the duly-ascertained findings of expert biologists and is a matter of scientific investigation and conclusion which cannot be arrived at by any general law. The opinion of the [C]ommission, after such due investigation as the evidence shows was made, is a fact, which, when evidenced by the [C]ommission's resolution, becomes the basis for the application of the provisions of the law by the resolution involved in this case. We are unable to reach the conclusion urged on the part of [the hunters] that the fixing of the open season, as was done by the [C]ommission, for antlerless deer, is unconstitutional or obnoxious, or open to any valid objection.

It is not clear what rights any of the [hunters] have which can or should be protected by the injunction prayed for. The result of the [C]ommission's action is to enlarge the privilege of every licensee. Practically, [the hunters] are asking that it be curtailed, at least in some of the counties, because in their opinion the conclusion of the [C]ommission, after full investigation, and with the concurrence and approval of the organized sportsmen of the State, is not to their liking.

The police regulation and management of public property must necessarily be lodged in some administrative agency, subject only to the general limitations fixed by the representatives of the people. The wisdom of the regulations may not be attacked and reviewed in such manner as is attempted by [the hunters] without showing some material disregard of the limitations, or some abuse of discretion, arbitrary or capricious. The whole record in this case fails to show any such vital defects.

There is nothing to indicate that [the hunters] or any of them are or can be damaged by the action of the [C]ommission complained of.

*Id.* at 669–70, 671–72.

While the principles announced in *Lehman* appear instructive, and may, in fact, ultimately control, it is simply too early to reach such a conclusion. In *Lehman,* the Court considered the evidence presented by the Game Commission and determined its resolution fixing an open season on antlerless deer was based on scientific evidence rather than arbitrary or capricious action. Here, however, in their Complaint, Sportsmen aver the Game Commission's policies and practices are arbitrary and are based on an undisclosed political agenda, rather than on scientific evidence. We must accept these averments as true at this stage.

Further, in *Lehman,* the Court found the hunters were given an opportunity to participate in the Game Commission's decision fixing an open season. Here, however, Sportsmen aver the Game Commission intentionally excluded them as well as members of the public from the formulation of policies. Accepting Sportsmen's averments as true, which we must at this stage, we cannot conclude *Lehman* is controlling.

## III. Proper Parties

Finally, Respondents contend DCNR, its Secretary and the Governor are not proper parties to this action. For several reasons, we agree.

First, it is clear the authority and duty to manage game in Pennsylvania is vested in the Game Commission. Specifically, Section 103 of the Game Code provides, "[t]he ownership, jurisdiction over and control of game or wildlife is vested in the [Game Commission] as an independent

agency of the Commonwealth...." 34 Pa. C.S. § 103(a). Further, Section 322(a) of the Game Code, which sets forth the powers and duties of the Game Commission, states, "[i]t shall be the duty of the [Game] [C]ommission to protect, propagate, manage and preserve the game or wildlife of this Commonwealth...." 34 Pa.C.S. § 322(a). Thus, the Game Commission is the Commonwealth agency charged with exclusive authority over management of the Commonwealth's wildlife resources, including the deer herd.

 Moreover, in their Complaint, Sportsmen fail to identify any mandatory duty on the part of DCNR, its Secretary, or the Governor with regard to management of the deer herd. In addition, Sportsmen do not seek any relief from these parties. Further, Sportsmen do not set forth the basis for any claim against DCNR, its Secretary, or the Governor as it relates to any governmental duty or function. In short, because there is no actual controversy between these parties and Sportsmen, DCNR, its Secretary, and the Governor are not proper parties to this suit. *See, e.g., Pa. Gamefowl Breeders Ass'n v. Commonwealth,* 122 Pa.Cmwlth. 52, 551 A.2d 361, 363 (1988) (quoting *Chester Upland Sch. Dist. v. Commonwealth,* 90 Pa.Cmwlth. 464, 495 A.2d 981, 984 (1985)) ("simply by naming, as respondents, governmental departments and officials charged with the general duty of upholding the laws of the Commonwealth, the petitioners have not suggested any basis for an actual controversy between themselves and those named respondents.") As such, Respondents' preliminary objection on this ground must be sustained and the Complaint dismissed as to DCNR, its Secretary and the Governor.

Based on the foregoing, we overrule Respondents' preliminary objection to standing; sustain Respondents' demurrer, but grant Sportsmen leave to amend their Complaint; and, sustain Respondents' preliminary objection on the ground DCNR, its Secretary and the Governor are not proper parties to this suit.

### ORDER

AND NOW, this 20th day of July, 2006, Respondents' preliminary objections to Petitioners' Complaint are resolved as follows:

1. The preliminary objection to standing is **OVERRULED;**

2. The preliminary objection in the nature of a demurrer is **SUSTAINED.** Petitioners are granted leave to amend the Complaint within 30 days of this date in accordance with the accompanying opinion.

3. The preliminary objection to improper parties is **SUSTAINED,** and the Pennsylvania Department of Conservation and Natural Resources, Michael DiBerardinis, Secretary of the Pennsylvania Department of Conservation and Natural Resources, and Edward G. Rendell, Governor of Pennsylvania, are **DISMISSED** from this action.