J-S74021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY MILLER | |
| Appellant | No. 870 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0009273-2012

BEFORE:  LAZARUS, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 15, 2019**

Appellant Timothy Miller appeals from the March 18, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his jury convictions for three counts of robbery, one count of conspiracy, and one count of aggravated assault.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  Following an armed robbery of three women in a hair salon, Appellant was arrested, and charged with, *inter alia*, the foregoing crimes.  Summarizing the trial testimony, the trial court found:

> Ms. Naadirah Fate, testified that on the afternoon of May 18, 2012, she was working at the Zoo Hair Salon located at 60th and Spruce in the City and County of Philadelphia, when a woman robbed her and two other occupants at gun point.  Prior to the robbery, at approximately 2:45 p.m., Ms. Fate was alone in the shop with [Appellant], who was cleaning at the time.  [Ms. Fate was on the phone with a car salesman whom she told her about

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(c), and 2702(a), respectively.

the $2000.00 she had to purchase a car. Appellant was close to Ms. Fate in the same section of the salon.] After [Ms. Fate got] off the phone with the car salesman, [Appellant] indicated to her that he knew someone who sold cars and left the shop. Shortly thereafter, three people, her cousin Malisha, her client Robin and Robin's five year old son, entered the shop. Shortly thereafter, a woman (later identified as Ms. Javonna Johnson) dressed in a "hoodie" and "big baggie pants" entered the salon demanding to speak to the owner. Ms. Fate called the current owner on her own cell phone and let Ms. Johnson talk to her.

At some point, Ms. Johnson pulled a gun from her hoodie and ordered everybody to slide their pocket books to the left, as well as their phones. Ms. Fate testified that Malisha complied, surrendering a denim purse. When Ms. Fate was unable to surrender a pocketbook, because she had just sold it to raise the money to purchase a car, Ms. Johnson cocked the gun, pointed it at her leg, and demanded: "Where's the money?" In her statement to Philadelphia Police Detective Campbell, she stated that Ms. Johnson finished her conversation with the owner; "Then she threw me back my phone, said "I heard you trying to buy a car today, where's the money at?" Ms. Johnson then pulled the trigger. Fortunately, the gun misfired. A struggle ensued, during which Ms. Johnson took the $2000.00 car money from Ms. Fate, which she had previously hidden in her pants.

Ms. Fate testified that as Ms. Johnson was struggling to get her money, [Appellant] opened the front door saying to Ms. Johnson: "Let's go." She then gathered everything up, including Malisha's pocketbook, Ms. Fate's money and the three women's cell phones, and fled.

Ms. Fate followed Ms. Johnson out of the shop and pursued her on foot. When they entered a nearby alleyway, [Appellant] pushed her to the ground, impeding her pursuit. She was then picked up by Malisha and continued the pursuit in her car. They followed Ms. Johnson to 5911 Irving Street, where she saw both [Appellant] and Ms. Johnson enter the house. She also testified that when the police arrived, she pointed out the house to them and when one of the officers knocked on the front door of the house, [Appellant] opened it.

Philadelphia Police Officer Damian Wyche testified that at approximately 2:30 p.m. on May 18, 2012, he was on routine patrol with his partner, Officer Clara Martinez, when they received a radio call for robbery in progress, a person with a gun. They were the first officers on the scene and were led to 5911 Irving Street by Ms. Fate, which Officer Wyche described as a corner property with an alley running behind it. Once there, he went to the back of the premises and his partner remained in the front. He saw [Appellant] and Ms. Johnson come into the backyard holding various objects in their hands, one of which he believed to be a gun. When he called out to them: "Let me see your hands,"

they threw objects into the next yard and retreated back into the house.

He testified that these objects were eventually recovered by Officer Ronald Green, who testified that, at Officer Wyche's direction, he recovered a black iPhone, a black iPod, and [] a Smith and Wesson Desert Eagle loaded with 12 rounds and one chambered. Ms. Fate identified the gun as the one used in the robbery.

Officer Clara Martinez testified that as she and her partner, Officer Damian Wyche, arrived at the hair salon, Ms. Fate told them that she had been robbed and led them 5911 Irving Street, where they both got out of their patrol car. She stayed in front as Officer Wyche went around the rear of the property. As she knocked on the front door, she could hear a lot of commotion from inside the house. When [Appellant], whom she described as sweating profusely, open [the door], he told her: "There's no one else here." Not believing him, she handcuffed him before entering. Once inside, Ms. Johnson was discovered in the basement.

Trial Court Opinion, 11/30/17, at 4-7 (record citations, footnotes and some quotation marks omitted). The jury found Appellant guilty of conspiracy, three counts of robbery and aggravated assault. On March 18, 2015, the trial court sentenced Appellant to a concurrent term of five to ten years' imprisonment for the robbery convictions. With respect to conspiracy and aggravated assault, the trial court sentenced Appellant to two and one-half to five years' imprisonment for each conviction, to run consecutively with his robbery sentence. Taken together, the trial court sentenced Appellant to ten to twenty years in prison.

On March 24, 2015, Appellant filed post-sentence motions, which were deemed denied by operation of law under Pa.R.Crim.P. 720(B)(3) on July 23, 2015. Appellant did not file a direct appeal.

On January 22, 2016, Appellant *pro se* filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, seeking the *nunc pro tunc* reinstatement of his direct appeal rights. On February 10, 2017, with the Commonwealth's concurrence, the PCRA court granted Appellant the requested relief, reinstating his direct appeal rights. Appellant timely appealed to this Court. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single issue for our review: "Was there insufficient evidence to convict Appellant Timothy Miller convictions of aggravated assault, conspiracy, and three counts of robbery?"[2] Appellant's Brief at 3 (unnecessary capitalizations omitted) (sic).

---

[2] As the Commonwealth points out, and we agree, Appellant has abandoned his sufficiency of evidence claim with respect to his convictions for robbery and aggravated assault because he failed to include it in the argument section of his brief, much less develop it in any coherent fashion. As a result, we cannot meaningfully review it. *See* Pa.R.A.P. 2119(a) (stating that the argument section of the parties' briefs "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctly displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009), ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted), ***cert. denied***, 562 U.S. 906 (2010); ***see also Commonwealth v. Murchinson***, 899 A.2d 1159, 1160 (Pa. Super. 2006) (deeming appellant's claims waived under Pa.R.A.P. 2119(a) because he did not develop meaningful argument with specific references to relevant case law and to the record to support his claims); ***Commonwealth v. Heilman***, 867 A.2d 542, 546 (Pa. Super. 2005) (recognizing that failure to provide "such discussion and citation of authorities as are deemed pertinent" may result in waiver);

"A claim challenging the sufficiency of the evidence is a question of law."

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014), ***appeal denied***, 95 A.3d 275 (Pa. 2014).

The Crimes Code defines conspiracy as follows.

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

---

***Commonwealth v. Cornelius***, 856 A.2d 62, 77 (Pa. Super. 2004) (declining to review appellant's claim where there was limited explanation and development of the argument). Even if his sufficiency claim is not abandoned, he still is not entitled to relief based on the reasons outlined in the trial court's November 30, 2017 opinion. ***See*** Trial Court Opinion, 11/30/17, at 13-15.

- 5 -

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

**(b) Scope of conspiratorial relationship.--**If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

**(c) Conspiracy with multiple criminal objectives.--**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

. . . .

**(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. 903(a), (b), (c) and (e).

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's sufficiency claim relating to his conviction for conspiracy. *See* Trial Court Opinion, 11/30/17, at 9-13. Accordingly, we affirm Appellant's judgment of sentence. We further direct that a copy of the trial court's November 30, 2017 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/19

- 6 -

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

**COURT OF COMMON PLEAS, CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

v.

TIMOTHY MILLER

870 EDA 2017

CP-51-CR-0009273-2012

**OPINION**



CP-51-CR-0009273-2012 Comm. v. Miller, Timothy
Opinion

8037226831

## STATEMENT OF THE CASE

Defendant is appealing his conviction on the charges of Robbery, Aggravated Assault and Conspiracy arising out of his participation in the gun point robbery of three women in a hair salon. Defendant is now seeking relief on the grounds that his convictions are against both the weight and sufficiency of the evidence. Defendant further complains that the Court abused its discretion in imposing sentence. Defendant's complaints are without merit.

## PROCEDURAL HISTORY

On November 14, 2011, Defendant was arrested and charged with numerous offenses, including inter alia; 1) Three counts of Robbery – Threatens Serious Bodily Injury pursuant to 18 Pa.C.S.A. §3701(a)(1)(ii); 2) One count of Criminal Conspiracy to Commit Robbery pursuant to 18 Pa.C.S.A. 903(C); 3) One count of Aggravated Assault

0054_Opinion

pursuant to 18 Pa.C.S.A. §2702(a); 4) One count of Possession of Firearm by a Person Prohibited pursuant to 18 Pa.C.S.A. §6105(a)(1) and 5) One count of Carrying Firearms on Public Streets or Public Property in Philadelphia pursuant to 18 Pa.C.S.A. §6108.

On October 23, 2014, at the close of the Commonwealth's case in chief, the Court granted Defendant's motion for acquittal on the charge of Carrying a Firearm on the Streets of Philadelphia. On October 23, 2014, at the conclusion of his jury trial, Defendant was found guilty on all three counts of Robbery, one count of Conspiracy and one count of Aggravated Assault. Subsequent to the jury's verdict, the Court found Defendant not guilty on the charge of Possession of a Firearm by a Person Prohibited. On March 18, Defendant was sentenced on each robbery charge to concurrent periods of confinement in a state correctional facility of 5 to 10 years. On the remaining charges of conspiracy and aggravated assault, Defendant was sentenced to two consecutive periods of confinement of 2½ to 5 years each, to run consecutively to his sentences on the robbery charges, for an aggregate sentence of 10 to 20 years of confinement.

On March 24, 2015, Defendant filed a post sentence motion seeking a new trial on the grounds that the verdicts were against the weight of the evidence or, in the alternative, a reconsideration of his sentence. On July 23, 2015, Defendant's motion was dismissed by operation of law. Defendant did not pursue his right to file a direct appeal.

On January 22, 2016, Defendant timely filed his *pro se* PCRA petition pursuant to 42 Pa.C.S.A. §9541, et. Seq., seeking reinstatement of his appellate rights. On May 16, 2016, Thomas F. Burke, Esq., was appointed as counsel to represent Defendant for the purposes of his PCRA petition. On November 4, 2016, on *pro se* motion of Defendant, Mr. Burke, was relieved of representation and on November 10, 2016, Richard Jan Blok,

2

Esq., was appointed as PCRA counsel. On December 12, 2016, Defendant filed a counseled amended PCRA petition. On February 10, 2017, the Court reinstated Defendant's appellate rights by agreement of the Commonwealth.

On March 3, 2017, Defendant timely filed the instant appeal to the Superior Court of Pennsylvania. On March 13, 2017, this Court filed and served on Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On April 3, 2017, Defendant timely filed his "Matters Complained of on Appeal. On May 22, 2017 the Superior Court granted Mr. Blok's petition to withdraw as PCRA counsel. On July 19, 2017, Douglas Earl, Esq., was appointed as counsel to represent Defendant for the purposes of this appeal. After being granted several extensions to file a statement of errors, Mr. Earl timely filed his "Statement of Matters Complained Of" on November 7, 2017. In his statement of matters, Defendant raises four issues, namely:

1. "The Verdict was against the weight of the evidence where multiple irreconcilably inconsistent statements were made by Commonwealth Witnesses. Appellant Timothy Miller was an employee of the salon. He was merely present during the incident.
2. There was insufficient evidence to sustain Appellant Timothy Miller convictions for aggravated assault, conspiracy, and three counts of robbery. Nothing was ever taken from complainant Robin Cousette. Appellant Timothy Miller at most was merely present a short period of time during the incident. There was nothing unusual about seeing Appellant Timothy Miller on camera because he was an employee of the salon.
3. The trial court abused its discretion when it sentenced Appellant to an aggregate sentence of 10 to 20 years incarceration, which did not follow the dictates of 42 Pa.C.S. § 9721 (b) that requires the court to a least consider the particular circumstances of the offense and the character of the defendant.

3

4. The Commonwealth failed to disclose exculpatory material. There was a videotape played for the jury for a short period of time. The Commonwealth had in its possession a video of the entire incident. Had the whole tape been shown to the jury, it would have shown that Appellant was outside of the salon for hours and did not just come along when the co-defendant entered the salon committing robbery. This would have clearly shown that a conspiracy did not exist because the Appellant was merely present, outside of the establishment where the crime was committed."

## EVIDENCE AT TRIAL

Ms. Naadirah Fate, testified that on the afternoon of May 18, 2012, she was working at the Zoo Hair Salon located 60th and Spruce in the City and County of Philadelphia, when a woman robbed her and two other occupants at gun point. (N.T., 10/21/14 pgs. 25, 30) Prior to the robbery, at approximately 2:45 p.m., Ms. Fate was alone in the shop with Defendant, who was cleaning at the time. After getting off the phone with a car salesman, Defendant indicated to her that he knew someone who sold cars and left the shop. (N.T., 10/21/14 pgs. 25-29, 92) Shortly thereafter, three people, her cousin Malisha,[1] her client Robin and Robin's five year old son, entered the shop. Shortly thereafter, a woman (later identified as Ms. Jovanna Johnson[2]) dressed in a "hoodie" and "big baggie pants" entered the salon demanding to speak to the owner. Ms. Fate called the current owner on her own cell phone and let Ms. Johnson talk to her. (N.T., 10/21/14 pgs. 30, 31) (N.T., 10/22/14 pgs. 21)

---

[1] Ms. Fate later identified the now deceased Malisha as Malisha Jessie. (N.T., 10/21/14 pgs. 43, 45)
[2] For the convenience of the discussion, hereafter the Court will refer to her as "Ms. Johnson."

4

At some point Ms. Johnson pulled a gun from her hoodie and "ordered everybody to slide their pocket books to the left...," as well as their phones. (N.T., 10/21/14 pg. 30, 31, 37) Ms. Fate testified that Malisha complied, surrendering a denim purse. When Ms. Fate was unable to surrender a pocketbook, because she had just sold it to raise the money to purchase a car, Ms. Johnson cocked the gun and pointing it at her leg, demanded: "Where's the money?" In her statement to Philadelphia Police Detective Campbell, she stated that Ms. Johnson finished her conversation with the owner; "Then she threw me back my phone, said 'I heard you trying to buy a car today, where's the money at.'" (N.T., 10/21/14 pg. 93) Ms. Johnson then pulled the trigger. Fortunately, the gun misfired. A struggle ensued, during which Ms. Johnson took the $2,000 car money from Ms. Fate, which she had previously hidden in her pants. (N.T., 10/21/14 pgs. 32-36, 93)

Ms. Fate testified that as Ms. Johnson was struggling to get her money, Defendant opened the front door saying to Ms. Johnson; "Let's go." (N.T., 10/21/14 pgs. 32, 59, 60) She then gathered everything up, including Malisha's pocketbook, Ms. Fate's money and the three women's cell phones, and fled. (N.T., 10/21/14 pg. 36, 37, 40, 56)

Ms. Fate followed Ms. Johnson out of the shop and pursued her on foot. When they entered a nearby alleyway, Defendant pushed her to the ground, impeding her pursuit. She was then picked up by Malisha and continued the pursuit in her car. They followed Ms. Johnson to 5911 Irving Street, where she saw both Defendant and Ms. Johnson enter the house. (N.T., 10/21/14 pg. 40, 41, 61, 76) She also testified that when the police arrived, she pointed out the house to them and when one of the officers

5

knocked on the front door of the house, Defendant opened it. (N.T., 10/21/14 pgs. 41, 42)

Philadelphia Police Officer Damian Wyche, testified that at approximately 2:30 p.m., on May 18, 2012, he was on routine patrol with his partner, Officer Clara Martinez, when they received a radio call "for a robbery in progress, a person with a gun." (N.T., 10/21/14 pgs. 100-101) They were the first officers on the scene and were led to 5911 Irving Street by Ms. Fate, which Officer Wyche described as a corner property with an alley running behind it. Once there, he went to the back of the premises and his partner remained in the front. (N.T., 10/21/14 pgs. 102, 103, 105, 115) He saw Defendant and Ms. Johnson come into the backyard holding various objects in their hands, one of which he believed to be a gun. When he called out to them; "Let me see your hands," they threw the objects into the next yard and retreated back into the house. (N.T., 10/21/14 pgs. 105-107, 128)

He testified that these objects were eventually recovered by Office Ronald Green, who testified that, at Officer Wyche's direction, he recovered "a black iPhone, a black iPod, and I believe a Smith and Wesson Desert Eagle loaded with 12 rounds and one chambered." (N.T., 10/21/14 pgs. 108, 109, 132) Ms. Fate identified this gun as the one used in the robbery. (N.T., 10/21/14 pg. 45)

Officer Clara Martinez, testified that as she and her partner, Officer Damian Wyche arrived at the hair salon, Ms. Fate told them that she had been robbed and led them to 5911 Irving Street, where they both got out of the patrol car. She stayed in front as Officer Wyche went around to the rear of the property. As she knocked on the front door, she could hear a lot of commotion from inside the house. When Defendant, whom

6

she described as sweating profusely, opened it, he told her; "There's no one else here." Not believing him, she handcuffed him before entering. (N.T., 10/21/14 pgs. 141-144, 148) Once inside, Ms. Johnson was discovered in the basement. (N.T., 10/21/14 pgs. 145, 146)

## DISCUSSION OF THE ISSUE RAISED

### I. THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.

In his first Statement of Errors, Defendant complains that the verdict "was against the weight of the evidence" stating that the verdict was based on "multiple irreconcilably inconsistent statements." In support, Defendant argues he was an employee of the salon and was merely present at the time of the robbery. Defendant's complaint is without merit.

In *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403, 408 (2003), our Supreme Court held that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." In accord; *Commonwealth v. Bostick,* 958 A.2d 543, 560 (Pa. Super. 2008) (Citations omitted) "Before a trial court may award a new trial on the ground that the [verdict is against the weight of the evidence,] it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's

7

decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth. v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (Citations omitted.) In *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009), our Superior Court, citing *Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008), held "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence."

"The mere existence of conflict in the prosecution's evidence is not fatal to its case because the Commonwealth is not bound by everything its witnesses say and the jury can believe all, part or none of the testimony." *Commonwealth v. Duncan*, 473 Pa. 62, 68, 373 A.2d 1051, 1053 (1977) "[T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury." *Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) (citation omitted)

"A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict…A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (Internal citations omitted) "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict

8

was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*, at 753

Defendant's failure to identify which conflicting testimony was "so unreliable and/or contradictory as to make any verdict based thereon pure conjecture," the Court is left to guess as to which testimony he is referring. After a careful review of the record, the Court acknowledges that conflicts did indeed exist in the testimony of the various witnesses, each of whom was subjected to an intensive cross-examination by counsel. However, there is nothing in the record to suggest that the jury's verdict was based upon "pure conjecture." The issue regarding the Defendant's employment and his presence was clearly before the jury. The Court finds that the resolution of these conflicts was clearly "within the ordinary capacity of jurors to assess" and resolve. Thus, the Court cannot conclude that the jury's "verdict was so contrary to the evidence as to shock one's sense of justice," making "the award of a new trial imperative."

## II.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT.

In his second statement of errors, Defendant complains that the evidence was "insufficient to sustain Appellants convictions for aggravated assault, conspiracy, and three counts of robbery." In support of his complaint, Defendant argues that the Commonwealth failed to prove that anything was taken from the complainant, Robin Cousette. He also argues that since Defendant was an employee of the salon, his presence was merely coincidental and there was nothing unusual about his being captured on the video. Defendant's complaint is without merit.

9

"A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Fisher*, 47 A.3d 155, 157 (Pa. Super. 2012) citing *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) In considering such a claim, the Superior Court "may not weigh evidence, nor substitute the fact-finder's judgment with this Court's...The facts and circumstances which have been established by the Commonwealth are not required to preclude every possibility of innocence...The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) A court may draw inferences from the facts so long as the inferred facts are more likely than not to flow from the proven facts. *Commonwealth v. Wodjak*, 466 A.2d 991, 996 (Pa. 1983).

The jury found Defendant guilty on three counts of robbery, one count of conspiracy to commit robbery and one count of aggravated assault. Since Defendant was not the principle actor, his convictions on the robbery and aggravated assault charges were predicated on his participation in the robbery as a co-conspirator.

The crime of conspiracy is defined at 18 Pa.C.S.A. 903, which provides in pertinent part: "(a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." The Pennsylvania Supreme Court in *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580,592 (Pa. 1998) held that, in the absence of an express agreement, such an agreement can be found through the actions of the parties. In reaching this determination, *Spotz* held: "Generally, a conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Although the existence of an agreement is an essential element of conspiracy, it is generally difficult to prove an explicit or formal agreement. Therefore, such an agreement may be established inferentially by circumstantial evidence, i.e. the relations, conduct or circumstances of the parties or overt acts on the part of co-conspirators." *Spotz*, 716 A.2d at 592. "Conspiracy is established when the Commonwealth proves the defendant entered into an agreement to commit or aid in the commission of an unlawful act, there was a shared criminal intent, and an overt act was taken in furtherance of the conspiracy. The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a

11

conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." *Commonwealth v. McCoy*, 69 A.3d 658, 664-65 (Pa. Super. 2013)

The evidence before the jury was sufficient for them to establish the existence of a conspiracy between Defendant and Ms. Johnson. Ms. Fate testified that shortly before the robbery, Defendant overheard her phone conversation with a car salesman and indicated that he knew someone who sold cars and left the shop. During the robbery, immediately before pulling the trigger, Ms. Johnson stated, "I heard you trying to buy a car today, where's the money at." During a brief struggle, in which Ms. Johnson took the $2,000 car money from Ms. Fate, Defendant stuck his head in the door saying; "Let's go." She also testified that Defendant pushed her to the ground, impeding her pursuit. Ultimately, Ms. Fate saw both Defendant and Ms. Johnson, enter the same house.

Her testimony was corroborated by that of Officers Martinez and Wyche. Officer Martinez testified that Defendant opened the door of the premises. Officer Wyche testified that, prior to gaining entry to the premises, he observed both Defendant and Ms. Johnson in close conversation in the backyard before throwing the gun used in the robbery into the adjacent yard, which Officer Green recovered. There is little doubt that

12

the evidence was sufficient for the jury to have concluded that Defendant and Ms. Johnson had acted in concert in both planning and committing the robbery.

Robbery as a felony of the first degree, is defined at 18 Pa.C.S.A. 3701 (a)(1)(iii) which provides in part that "(a)(1) "A person is guilty of robbery if, in the course of committing a theft, he...(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury." § 3701 provides further at (a)(2) that: "An act shall be deeded 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." Theft is defined at 18 Pa. C.S. §3921(a) as "(a) a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, moveable property of another with the intent to deprive him thereof."

It has long been recognized that "the Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury. The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury. A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm." *Commonwealth v. Hopkins*, 747 A.2d 910, 914–15 (P. Super. 2000) (Internal citations omitted)

Defendant was found guilty of Aggravated Assault pursuant to 18 Pa.C.S.A. 2702 (a)(1) which provides in part that, (a) "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally,

13

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Serious bodily injury is defined at 18 Pa.C.S.A. 2301 as, "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss, or impairment of the function of any bodily member or organ." Criminal Attempt is defined at 18 Pa.C.S.A. 901 as, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Our Supreme Court held, in *Commonwealth v. Matthew*, 589 Pa. 487, 492, 909 A.2d 1254, 1257 (Pa. 2006), "A person acts intentionally with respect to a material element of an offense when...it is his conscious object to engage in conduct of that nature or to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." (Citations omitted)

As noted above, Ms. Fate testified that shortly after Ms. Johnson entered the salon, she pulled a gun from her hoodie and demanded everyone's pocket books and phones. Ms. Johnson then cocked the gun and pointing it at Ms. Fate's leg said: "Where's the money?" Getting no response, she pulled the trigger but, fortunately, the gun misfired. A struggle then ensued during which Ms. Johnson recovered $2,000 from Ms. Fate. Ms. Johnson then gathered Malisha's pocketbook, Ms. Fate's money and the three women's cell phones and fled.

Defendant's complaint that the Commonwealth failed to prove that Robin Cousette's (Robin) cell phone was taken during the robbery, thus negating his conviction on one of the charges of robbery, is utterly frivolous. Ms. Fate testified that Robin's cell

14

phone was not only taken during the robbery but was among the items eventually recovered at the time of Defendant's arrest. (N.T., 10/21/14 pgs. 36, 37, 56) Furthermore, a conviction pursuant to §3701 (a)(1)(ii) does not require that the predicate offense of theft be completed, but only that it was attempted, to sustain a conviction for robbery. *Commonwealth v. Robinson*, 936 A.2d 107 (Pa. Super. 2007)

Ms. Fate's testimony that during the course of the robbery, Ms. Johnson not only pointed the gun at her leg, but pulled the trigger, was sufficient establish that Ms. Johnson attempted "to cause serious bodily injury to another...intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." On denying Defendant's motion for acquittal on the charge of aggravated assault, the Court noted for the record she pulled the trigger while the gun was pointed at Ms. Fate's leg. This clearly amounted to "an attempt to inflict serious bodily injury in that not only is serious bodily injury a danger of death...I mean, depending on how much damage is done to the leg, you can lose the use of the leg, or at least a protracted use of the leg. Shooting someone in the leg -- even if you don't kneecap them -- anywhere in the leg is an attempt to inflict serious bodily injury. So that motion is denied." (N.T., 10/22/14 pg. 44)

It is clear from the record that the Commonwealth met its burden of establishing each material element of the crimes of robbery and aggravated assault. As discussed above, the evidence was also sufficient to conclude that Defendant was an active participant in the robbery and is, therefore, equally liable for Ms. Johnson's conduct in assaulting Ms. Fate.

15

**III. THE ADDISSION OF THE VIDEO EVIDENCE WAS PROPER.**

In his fourth Statement of Errors, Defendant baldly and erroneously asserts; "The Commonwealth failed to disclose exculpatory material." There is no evidence on the record to suggest that a copy of the video in question was not disclosed or made available to Defendant prior to trial. In support of this complaint, Defendant argues that had the "entire tape been shown to the jury," it would have established that Defendant was merely present at the time of the robbery and not a participant. Defendant's complaint is without merit, and is deemed waived.

The Pennsylvania Rules of Appellate Procedure (Pa. R. App. P.) specifically provide at Rule 302(a) that "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." The Pennsylvania Superior Court in *Commonwealth v. Charleston*, 16 A.3d 505 (Pa. Super. 2011), held that raising an issue for the first time in a 1925(b) statement does not satisfy the mandate of Rule 302(a). Furthermore, it is well-settled that "the failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 713 (Pa.Super.2013) "[T]o preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal." *Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa. Super. 2014) (Internal citations omitted)

Although trial counsel objected to the introduction of the video on the grounds that it had not been properly authenticated, he did not object to its admission based on its

16

length. (N.T., 10/21/14 pgs. 50, 53) (N.T., 10/22/14 pg. 40) Therefore, Defendant's objection is deemed waived.

That said, Defendant engaged in a lengthy discussion with the Court regarding the length of the video itself. Counsel for the Commonwealth stated for the record that the video recording in her possession was approximately 12 minutes long commencing approximately 2 minutes before the robbery and that she had shown only that portion relating directly to the robbery. Additionally, Philadelphia Police Detective Robert Conway, testified that he was the lead detective investigating the robbery. As part of the investigation, his "video recovery specialist," Detective Wilson, recovered video of the area in question. He personally viewed the recovered video, testifying that, it was standard procedure to "focus on the alleged time of the incident" and that it was normal to preserve those portions of a recovered video commencing 2 minutes before the incident. He also stated that if he felt additional footage was needed, he would have asked for it. (N.T., 10/22/14 pgs. 27-31) It is clear that the video in the Commonwealth's possession was made available to Defendant and related only to that period of time relevant to the commission of the robbery.

Regarding trial counsel's objection to the introduction of the video; "When the evidence in question is a photograph, it may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect." *Commonwealth v. Loughnane*, 128 A.3d 806, 814 (Pa. Super. 2015) This logic applies to videos as well. On viewing the video, Ms. Fate identified the location being shown as the front of her salon and depicting Ms. Johnson as both entering and leaving during the course of the robbery. (N.T.,

17

10/21/14 pgs. 57-61) In admitting the video into evidence, the Court found that it had been properly authenticated by Ms. Fate as to both time and place. (N.T., 10/22/14 pgs. 41, 42)

## IV. DEFENDANT'S SENTENCE WAS APPROPRIATE.

In his third Statement of Errors, Defendant essentially complains that the Court abused its discretion in sentencing him to consecutive terms of confinement amounting to an aggregated sentence of 10 to 20 years of confinement. Defendant's complaint is without merit.

It is well established that in reviewing sentencing matters, the decision trial court is accorded "great weight, as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Canfield*, 639 A.2d 46, 50 (Pa. Super. 1994) (internal citation omitted) Further, a sentence imposed by the sentencing judge will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Galletta*, 864 A.2d 532, 34 (Pa. Super. 2004). An abuse of discretion is found where, "by reference to the record...the sentencing court ignored or misapplied the law, exercised its judgement for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision...an abuse of discretion is not shown merely by an error in judgment." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) Such deference is given to the sentence imposed because "the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961

18

(Pa. 2007) citing *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990) (internal citations omitted).

In imposing sentence, the sentencing code, at 42 Pa.C.S.A. § 9721(b), requires that the sentence be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." It also requires the Court to state on the record its reasons for imposing sentence. A sentencing court "need not specifically cite or include the language of the sentencing code, it must only demonstrate that the court has considered the factors specified in the code." *Commonwealth v. Cappellini*, 690 A.2d 1220, 1228 (Pa. Super. 1997) (Internal citations omitted) "Nevertheless, a lengthy discourse on the trial court's sentencing philosophy is not required. Rather, the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender." *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa.Super.2006) (Internal citations omitted)

Pennsylvania's sentencing guidelines are advisory only. *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 2001) The only line that a sentence may not cross is the statutory maximum sentence. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1119 (Pa. 2007)

In his complaint, Defendant does not complain that his sentence exceeds the guide line ranges, tacitly conceding that the sentence imposed on each count was proper. As discussed below, each of Defendant's sentences fall squarely within the sentencing guidelines' minimum ranges, and two even within mitigated ranges.

19

Prior to imposing sentence, counsel agreed that on each of the charges for which he was convicted the offense gravity score (OGS) was 10 and that Defendant's prior record score (PRS) was 5. It was also agreed that, as to each charge, the guidelines recommended a minimum sentence of 60 to 72 months, ± 12 months incarceration, for a total possible minimum guideline sentence of 50 to 100 years. Defendant was not eligible for the Recidivism Rate Reduction Incentive (RRRI). (N.T., 3/18/15, pg. 6, 9, 17, 18)

At the conclusion of his sentencing hearing, the Court sentenced Defendant on each robbery charge to concurrent periods of confinement in a state correctional facility of 5 to 10 years. On the remaining charges of conspiracy and aggravated assault, Defendant was sentenced below the guidelines to two consecutive periods of confinement in a state correctional facility of 2½ to 5 years each, to run consecutively to his sentences on the robbery charges, for an aggregate sentence of 10 to 20 years of confinement. (N.T., 3/18/15, pgs. 40-42)

Prior to imposing sentence the Court reviewed Defendant's PSI, heard argument of counsel and carefully considered Defendant's testimony, the testimony of his character witness, as well as the favorable testimonials regarding his character. On imposing sentence, the Court noted for the record:

"With regard to this sentence, when I made my calculation within the guidelines, in fact, at the bottom end of the guidelines, five to ten years for these robbery charges is a guideline sentence, and there are three counts of robbery.

As a general rule, I do not run those counts concurrent with each other, I run them consecutively, because I don't think you should get a volume discount when you rob three people instead of one.

20

On top of that, two-and-a-half to five for the aggravated assault because it is worse when you actually pull the trigger and try to shoot somebody. And it wasn't you, it was your accomplice, but you're responsible for what she did.

And conspiracy, the law says that's an additional offense. It's worse when people get together and do things by agreement than doing them on their own or more spontaneously

When I add that all up, consecutive sentences, the total is 20 to 40 years. However, I've considered the arguments of counsel, the presentence report. I recall most of the testimony from trial. While the defendant is, I believe, a threat to the community, I am not confident that he isn't going to be back. His likelihood of recidivism is right up near the top. The DA's only asking for ten to 20 years, and if that's all the DA wants, then I'll go along with that." (N.T., 3/18/15, pgs. 40, 41)

In essence, Defendant is not complaining that his individual sentences do not exceed the guidelines, which, as noted above they do not, but that the Court erred in imposing consecutive sentences. "Long standing precedent of this Court recognizes that 42 Pa.C.S.A. §9721, affords the sentencing court's discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Mastromarino*, 2 A.3d 581, 586-5875 (Pa.Super.2010) The Court is of the opinion that Defendant represents an ongoing threat to society and is a poor candidate for rehabilitation. Furthermore, he has not accepted responsibility for his participation in the robbery of three women and, in fact, accused the Commonwealth's witnesses at trial of lying, which the jury found unconvincing. (N.T., 10/22/14, pgs. 75-78) Although the Court saw no reason not to impose a more severe sentence, it acquiesced to the recommendation of the Commonwealth. The Court finds Defendant's sentence to be more than reasonable under the circumstances.

21

**CONCLUSION**

The Court finds that the jury's verdict was not against either the weight or sufficiency of the evidence. The Court also finds that Defendant's sentence was appropriate.

BY THE COURT:

November 30, 2017

HON. CHARLES J. CUNNINGHAM, III    J.

22